JL

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Joseph Norman, | No. CV 18-01971-PHX-DGC (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Corizon Healthcare Incorporated, et al., | |
| Defendants. | |

Plaintiff Thomas Joseph Norman, who is currently confined in the Arizona State Prison Complex-Eyman, brought this civil rights action pursuant to 42 U.S.C. § 1983. Defendants Corizon Healthcare Inc. ("Corizon"), Connie Hawley, Milen Vitanov,[1] and Jeffrey Wight move for summary judgment. (Doc. 31.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 33), and he opposes the Motion. (Doc. 37.) The Court will grant the Motion for Summary Judgment.

**I.    Background**

On screening the First Amended Complaint (Doc. 13) under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment deliberate indifference claim against Defendants Corizon, LPN Hawley, and dentists Dr. Wight and Dr. Vitanov

---

[1] Defendant Vitanov is named as "Vitano Milen." Plaintiff's medical records indicate this Defendant's actual name is Milen Vitanov.

1 and ordered them to answer the claim. (Doc. 18.) The Court dismissed the remaining
2 Defendant. (*Id.*)

**II. Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).
. . . .

### III. Facts

In January 2017, Plaintiff began to experience discomfort on his tongue due to a cavity on an upper front tooth. (Doc. 6 (Pl. Decl.) at 2.)[2] Plaintiff sought advice from an outside former dental professional, Dr. Johnson. (*Id.*) Dr. Johnson advised Plaintiff to submit a Health Needs Request (HNR), describing his condition. (*Id.*)

On January 11, 2017, Plaintiff submitted an HNR, stating he had a cavity in his front top tooth that was causing discomfort to his tongue. (Doc. 6-1 at 3.) He requested that cavity be filled to save the tooth. (*Id.*) The following day, Plaintiff was seen on the nurse's line and requested that the cavity be filled. (Doc. 32 at 7.) He was referred to the dental line. (*Id.*) On January 13, 2017, Plaintiff submitted an HNR requesting to have "a tooth filled." (Doc. 6-2 at 1.) The same day, Plaintiff saw Defendant Dr. Wight. (Doc. 32 at 7.) Plaintiff "pointed directly to the decaying tooth (tooth #7)," which was cutting into his tongue and causing him severe pain and discomfort, and which affected his activities of daily living, including properly chewing, eating, swallowing, and sleeping. (Doc. 37 at 2.)

According to the Health Services Encounter for the visit, Plaintiff reported that his front tooth "bother[ed] his tongue sometimes," but denied tooth pain. (Doc. 32 at 7.) Defendant Wight tested the #7 tooth to determine whether there were acute or chronic abscesses or looseness of the tooth and informed Plaintiff there were none. (Doc. 37 at 2.) Wight did not inform Plaintiff that any other teeth were decayed or needed repair. (*Id.*) In addition, "they" advised Plaintiff that the tooth could be filled, that he needed to submit an HNR to be placed on the waiting list, and that the typical waiting period was 60 to 90 days. (Doc. 6 at 3.)

According to the Health Services Encounter, Wight noted deep caries in the #7 and #8 teeth and that "#8 is the tooth [Plaintiff] would like to have done at this time." (Doc. 32 at 7.) Wight also noted there was some bone loss present. (*Id.*) Wight "refused" to repair the #7 tooth at that appointment and instead "delayed [and] interfered with the community

---

[2] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

standard of care" by advising Plaintiff to submit an HNR to schedule another appointment to repair the tooth, forcing Plaintiff to wait an additional 60 to 90 days for treatment. (*Id.* at 2-3.)

On January 14, 2017, Plaintiff submitted an HNR requesting a filling. (Doc. 32 at 13.) On March 20, 2017, Plaintiff submitted an HNR requesting an appointment "to have a cavity filled." (Doc. 6-2 at 3.) The same day, Plaintiff saw Defendant Dr. Vitanov. (Doc. 32 at 15.) Vitanov asked Plaintiff which tooth he wanted repaired, and Plaintiff pointed to the #7 tooth. (Doc. 37 at 3.) Without consulting the x-ray, Vitanov filled the wrong tooth (the #8 tooth). (*Id.*) Plaintiff informed Vitanov that he had repaired the wrong tooth and asked him to repair the #7 tooth. (*Id.*) Vitanov "refused to remedy his error" and instead instructed Plaintiff to submit another HNR, forcing him to wait an additional 60 to 90 days to have the correct tooth repaired. (*Id.*)

According to the Health Services Encounter, Vitanov noted that Plaintiff had pointed to his #8 tooth and stated that he wanted it fixed. (Doc. 32 at 15.) Vitanov documented that the #8 tooth had gross decay near the pulp, was not sensitive to palpation or percussion, and had 30% bone loss and moderate periodontitis. (*Id.*) Vitanov also noted that x-rays of the #8 tooth had shown coronal radiolucency near the pulp. (*Id.*) Vitanov documented that the prognosis for the #8 tooth was "questionable due to gross decay," and informed Plaintiff that if the decay was within the nerve, then the tooth would need to be extracted. (*Id.*) Vitanov noted that Plaintiff "insisted" that he wanted a filling, not an extraction, and Vitanov filled the tooth. (*Id.* at 15-16.)

On March 28, 2017, Plaintiff submitted another "more descriptive" HNR, stating that the "wrong tooth" had been filled.[3] (Doc. 6-2 at 5; Doc. 32 at 19; Doc. 38 at 3.) Plaintiff did not receive a response to that HNR. (Doc. 38 at 3.) On June 6, 2017, Plaintiff submitted an Inmate Informal Complaint Resolution, claiming that the wrong tooth had

---

[3] Plaintiff attached a copy of the March 28, 2017 HNR to his Declaration, but the HNR is illegible. (Doc. 6-2 at 5.)

- 4 -

been filled on March 20, 2017, and it had been six months since he had requested treatment for the original tooth. (Doc. 32 at 27; Doc. 6-3 at 2.)

On June 7, 2017, Plaintiff saw Dr. Gill and requested a filling for the #7 tooth. (*Id.* at 22.) Dr. Gill informed Plaintiff that the #7 tooth was beyond repair and should be extracted. (Doc. 37 at 3.) Plaintiff told Dr. Gill that he would pursue the appropriate dental care through the grievance process, since Dr. Gill was "refusing" to provide Plaintiff with the community standard of care. (*Id.*) According to the Health Services Encounter from the visit, Plaintiff told Dr. Gill that he had been seen in January and had requested a filling of the #7 tooth, but instead the #8 tooth had been filled on March 20, 2017. (Doc. 32 at 19.) Dr. Gill documented that the notes from the January and March visits indicated that the #8 tooth "was of greater concern" to Plaintiff at that time. (*Id.* at 22.) Dr. Gill noted that Plaintiff denied current pain or sensitivity. (*Id.*) Dr. Gill documented that the #7 tooth had non-restorable caries extending to the pulp. (*Id.* at 23.) Dr. Gill also noted that he advised Plaintiff that x-rays performed on January 13, 2017 showed that the cavity extended into the nerve, and, based on the depth of the cavity, a filling was not an "appropriate" treatment. (*Id.* at 24.) Dr. Gill noted that "per policy," Plaintiff did not qualify for root canal therapy, Plaintiff refused extraction of the tooth, and he chose not to sign a refusal form. (*Id.*)

On June 9, 2017, Defendant Hawley responded to Plaintiff's June 6 Informal Complaint, stating that the notes from the January 13 and March 20, 2017 visits showed that the #8 tooth was "of greater concern" to Plaintiff at the time and that Plaintiff did not qualify for a root canal "per policy." (Doc. 32 at 28.) However, Corizon has no established policy regarding root canals. (Doc. 37 at 4.) Hawley further stated that Plaintiff's medical record did not "evidence any substandard care by Dental." (Doc. 32 at 27.)

Plaintiff spent the next several months filing the proper grievances until his appeal was ultimately denied by former ADC Director Charles Ryan. (Doc. 6-4; Doc. 6-5; Doc. 37 at 4.) Since June 2017, Plaintiff has not submitted an HNR concerning his teeth and has not had another dental encounter. (Doc. 32 at 30.)

## IV. Discussion

### A. Eighth Amendment Standard

To support a medical care claim under the Eighth Amendment, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective standard. First, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted).

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). Deliberate indifference may also be shown where prison officials fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [courts] need not defer to the judgment of prison doctors or administrators.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)).

Deliberate indifference is a higher standard than negligence or lack of ordinary care for the prisoner's safety. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also*

*Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

### B. Serious Dental Need

Defendants do not dispute that Plaintiff's dental needs were serious. The Court will assume for purposes of this Order that Plaintiff's dental needs were serious. The motion for summary judgment turns on whether Defendants' conduct amounted to deliberate indifference.

### C. Deliberate Indifference

To establish deliberate indifference, a plaintiff must first show that the defendant was "subjectively aware of the serious medical need[.]" *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017–18 (9th Cir. 2010) (quotation and citation omitted). The plaintiff must then show: (1) a purposeful act or failure to respond to the plaintiff's pain or possible medical need; and (2) harm caused by the indifference. *Jett*, 439 F.3d at 1096. A plaintiff may meet the harm requirement by demonstrating that the defendant's actions or policies expose the plaintiff to a "substantial risk for serious harm." *Parsons v. Ryan*, 754 F.3d 657, 677 (9th Cir. 2014). A plaintiff does not need to "await a tragic event" before seeking a remedy. *Farmer*, 511 U.S. at 828.

#### 1. Wight and Vitanov

Defendants argue that Wight and Vitanov each had one visit with Plaintiff, and an isolated incident of neglect or lack of treatment generally does not support an Eighth Amendment deliberate indifference claim. (Doc. 31 at 8-9.) In response, Plaintiff argues that Wight and Vitanov interfered and delayed with his treatment when Wight "refused" to

repair the #7 tooth and instructed him to submit an HNR for another appointment and when Vitanov repaired the wrong tooth and refused to repair the correct tooth. (Doc. 37 at 5.) Plaintiff claims this caused him more decay and allowed him to remain in pain that affected his activities of daily living and resulted in further tooth decay. (*Id.*)

During the January 2017 visit, Defendant Wight noted that Plaintiff had deep caries in the #7 and #8 teeth and that Plaintiff wanted the #8 tooth filled. During Plaintiff's visit with Defendant Vitanov, Vitanov noted that Plaintiff had pointed to the #8 tooth and stated that he wanted it fixed. Assuming Wight misidentified the tooth that Plaintiff wanted filled and Vitanov then filled the wrong tooth, these incidents do not demonstrate that either Wight or Milen acted with deliberate indifference. If Plaintiff's allegations are correct, Wight and Vitanov each made an error with respect to which tooth Plaintiff wanted filled. But negligence, gross negligence, or even medical malpractice do not amount to deliberate indifference. *See Clement*, 220 F. Supp. 2d at 1105; *Broughton*, 622 F.2d at 460.

There is also no evidence in the record that Wight and Vitanov had any discretion to immediately fill Plaintiff's tooth upon his request, rather than inform him that he must submit a separate HNR for another appointment to have the tooth filled. Nor is there evidence in the record that Wight or Vitanov had control over scheduling appointments or were involved in or responsible for the delay between Plaintiff's appointments.

Furthermore, there is no evidence that Wight or Vitanov purposefully failed to treat Plaintiff or, that because of their treatment, Plaintiff was at substantial risk for serious harm. Plaintiff asserts that Defendants had other options for the treatment of tooth #7, including a root canal or a pulp cap.[4] (Doc. 37 at 5.) But the evidence in the record demonstrates, at

---

[4] In support of this assertion, Plaintiff cites a document he attached to his Declaration. Plaintiff wrote a note to non-party Dr. Johnson, a former dental surgeon, in which he told Dr. Johnson that he had been told that he did not qualify for a root canal because of bone loss and receding gums. (Doc. 6-3 at 6.) In response to Plaintiff's note, Dr. Johnson wrote a note that advised Plaintiff to ask the dentist whether there was any "clear sign of an abscess," and if there was not, to ask the dentist to "try a deep filling with a pulp cap to protect the nerve." (*Id.*) Dr. Johnson told Plaintiff that a pulp cap in a very deep filling is a "risk" because the tooth may abscess. (*Id.*) Dr. Johnson also advised Plaintiff that the "worst that can happen" is that the tooth would begin to hurt, in which case Plaintiff would have to have it extracted. (*Id.*)

most, a disagreement between medical professionals concerning appropriate treatment. "A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014) (quoting *Snow v. McDaniel*, 618 F.3d 978, 982 (9th Cir. 2012)). Dr. Johnson and Plaintiff's disagreement with the treatment Plaintiff received does not establish that Wight and Vitanov were deliberately indifferent, and there is no evidence in the record that the treatment Plaintiff received was "medically unacceptable" under the circumstances. *Id.* Plaintiff has not shown that either Wight or Vitanov disregarded a substantial risk of serious harm to Plaintiff. *See Estelle*, 429 U.S. at 105-06.

Based on the evidence in the record, the Court finds there is no genuine dispute of material fact with respect to whether Defendants Wight and Vitanov were deliberately indifferent to Plaintiff's serious dental needs.

### 2. Hawley

Under Ninth Circuit law, a defendant can be liable for failure to act. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Generally, whether a defendant's denial of administrative grievances is sufficient to state a claim depends on several facts, including whether the alleged constitutional violation was ongoing, *see e.g.*, *Flanory v. Bonn*, 604 F.3d 249, 256 (6th Cir. 2010), and whether the defendant who responded to the grievance had authority to take action to remedy the alleged violation, *see Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009). For medical decisions, however, prison administrators generally are not deliberately indifferent when their failure to act is based on a medical evaluation. Because administrators are not doctors, they have no duty to investigate or override decisions of medical staff. *Cf. Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (finding no deliberate indifference where supervisor signed off on plaintiff's grievance appeal without independently reviewing plaintiff's claims because the supervisor had no independent experience in the particular area of medicine and relied on the medical opinions of staff with the relevant expertise).

"A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060. Similarly, the subjective approach to deliberate indifference "focuses only 'on what a defendant's mental attitude actually was.'" *Toguchi*, 391 F.3d at 1057 (quoting *Farmer*, 511 U.S. at 839). Even if a prison official "'should have been aware of the risk, but was not," the official "has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiff alleges that Defendant Hawley "fabricated" her response to Plaintiff's Informal Complaint because Corizon has no established policy regarding root canals. (Doc. 37 at 4.) But whether or not there was such a policy, Hawley's response to Plaintiff's Informal Complaint demonstrates that she did not subjectively believe Plaintiff was at substantial risk of suffering serious harm. Thus, even if Hawley should have known of a substantial risk of serious harm, Hawley's response did not constitute deliberate indifference to Plaintiff's serious dental needs. *Toguchi*, 391 F.3d at 1057.

Moreover, there is no evidence in the record that Defendant Hawley was personally involved in Plaintiff's treatment. Hawley acted solely as an administrator in responding to Plaintiff's Informal Complaint. A prison administrator can be held liable for deliberate indifference to a prisoner's medical needs if she "knowingly fail[s] to respond to an inmate's requests for help." *Peralta*, 744 F.3d at 1086. The evidence in the record demonstrates that Hawley relied on her review of Plaintiff's medical records and the providers' determinations concerning his treatment when she responded to his letters and grievances. There is no evidence that Hawley made any treatment decisions or personally caused or directed delays in Plaintiff's treatment or any denial of care. Hawley's response merely repeated facts that were reflected in Plaintiff's medical records.

For the foregoing reasons, the Court finds there is no genuine dispute of material fact regarding whether Defendant Hawley was deliberately indifferent to Plaintiff's serious medical needs.

### 3. Corizon

To prevail on a claim against Defendant Corizon as a private entity serving a traditional public function, Plaintiff must meet the test articulated in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities acting under color of state law). Plaintiff must show that an official policy or custom caused the constitutional violation. *Monell*, 436 U.S. at 694. To make this showing, he must demonstrate that: (1) he was deprived of a constitutional right; (2) Corizon had a policy or custom; (3) the policy or custom amounted to deliberate indifference to Plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). If the policy or custom in question is unwritten, the plaintiff must show that it is so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

The Court has already determined that Plaintiff did not suffer a constitutional injury due to Defendants' conduct. Furthermore, there is no evidence in the record that Corizon had a policy or custom that amounted to deliberate indifference to Plaintiff's rights and caused injuries.

Plaintiff argues that Corizon had no official policy with respect to root canals and no policy prescribing the criteria that must be met to qualify for a root canal. (Doc. 37 at 6.) Thus, according to Plaintiff, Corizon denied Plaintiff a root canal because he did not qualify for that treatment under a "non-existent" policy. (*Id.*) Plaintiff also points to Dr. Johnson's opinion that Corizon did not perform its duties according to the community standard of care by failing to perform the appropriate tests to rule out the possibility of root canal treatment.[5] (Doc. 38 at 4; Doc. 6-1 at 1.)

---

[5] Plaintiff attached to his Declaration a letter signed by Dr. Johnson, in which Dr. Johnson stated that he had seen Plaintiff's tooth before the initial examination on January 13, 2017, and that Plaintiff's "chief complaint" was that the #7 tooth was causing

- 11 -

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). It is undisputed that Defendant Corizon did not have a formal policy regarding root canals. Plaintiff points only to one instance of Corizon not performing a root canal. The Ninth Circuit has recognized that a single instance is insufficient to establish a custom or practice. *See Oyenik v. Corizon Health Inc.*, 696 Fed. App'x 792, 793-94 (9th Cir. 2017). The evidence in the record is insufficient to establish that Corizon had a policy, custom, or practice of denying root canals.

Based on the evidence in the record, the Court finds there is no genuine dispute of material fact with respect to whether Corizon had a policy or custom that amounted to deliberate indifference and that such a policy or custom resulted in injury to Plaintiff.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 31).

(2) Defendants' Motion for Summary Judgment (Doc. 31) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 30th day of December, 2019.

*David G. Campbell*
David G. Campbell
Senior United States District Judge

---

discomfort. (Doc. 6-1 at 1.) Dr. Johnson further stated that the decay on the #7 tooth was "clearly visible and was the obvious cause of the tongue irritation." (*Id.*) Dr. Johnson opines that the treatment on March 13, 2017 was "grossly substandard" and the "normal standard of care was not met." (*Id.*)